```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
BISHME ALLAH; NAKISHA CLAIBORNE;
NAKISHA CLAIBORNE, for MINOR
CHILD, A.A.,

                    Plaintiffs,

        -against-                                           NOT FOR PUBLICATION
                                                            MEMORANDUM AND ORDER
THE CITY OF NEW YORK; GLADYS                                15-CV-6852 (CBA) (LB)
CARRION, Commissioner of the New
York City Administration for Children's
Services; MARGARET ADEYELE, a Child
Protective Specialist Supervisor for the New
York City Administration for Children's
Services; MITCHELL WALKER, a Child
Protective Specialist Supervisor for the New
York City Administration for Children's
Services; BAAJNARINE SINGH, a Child
Protective Specialist for the New York City
Administration for Children's Services;
MICHELLE GLATT, an Attorney for the
New York City Administration for Children's
Services; THE STATE OF NEW YORK;
MARY R. O'DONOGHUE, a Judge for the
Family Court of the State of
New York, County of Queens,

                    Defendants.
----------------------------------------------------------------X
BISHME ALLAH,

                    Plaintiff,

        -against-

The STATE OF NEW YORK; PAMELA LEIGH
BISHOP, an Assistant District Attorney; MARY
R. O'DONOGHUE, a Judge for the Family Court
of the State of New York, County of Queens; The
CITY OF NEW YORK; GLADYS CARRION,
Commissioner of the New York City
Administration for Children's Services;
WILLIAM J. BRATTON, Commissioner of the
New York City Police Department; JOHN
```



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 17 2019 ★
BROOKLYN OFFICE

1

PHELAN, a Detective for the New York City
Police Department; MARGARET ADEYELE, a
Child Protective Specialist Supervisor for the New
York City Administration for Children's
Services; DAPHNE ALTEMA, a Child
Protective Specialist Supervisor for the New York
City Administration for Children's Services;
BAAJNARINE SINGH, a Child
Protective Specialist for the New York City
Administration for Children's Services;
TERRI WALKER, a Child Protective Manager
for the New York City Administration for
Children's Services; NORTH SHORE-LONG
ISLAND JEWISH HEALTH SYSTEM;
MICHAEL J. DOWLING, President and
Chief Executive Officer for the North Shore-
Long Island Jewish Health System; JAMIE
HOFFMAN-ROSENFELD, a Physician for the
North Shore-Long Island Jewish Health System,

16-CV-333 (CBA) (LB)

Defendants.

------------------------------------------------------------X

**AMON, United States District Judge:**

Plaintiff Bishme Allah filed this action pursuant to 42 U.S.C. § 1983 and New York law against various officials alleged to be involved in his arrest, prosecution, and subsequent Family Court proceedings. (D.E. # 74 ("Third Amended Complaint," or "TAC").) On September 28, 2018, this Court issued a Memorandum and Order granting a motion to dismiss brought by defendants Northwell Health and Dr. Jamie Hoffman-Rosenfeld (collectively, the "Northwell Defendants"), and defendants Richard Brown and Leigh Bishop, (the "D.A. Defendants"), largely based on the doctrines of absolute and qualified immunity. (D.E. # 108 ("M&O").) On October 26, 2018, Allah filed a motion asking the Court to reconsider the portion of the M&O determining that the Northwell Defendants were entitled to qualified immunity on his federal and state-law claims, arguing: (1) that the Court improperly took judicial notice of documents extraneous to the

2

Amended Complaint; (2) that qualified immunity at the motion to dismiss stage cannot be granted "unless it can be found [o]n the face of the complaint"; and (3) that the Court failed to accept as true several allegations that were pleaded in his Amended Complaint. (D.E. # 113 ("Mot.").) On January 4, 2019, Allah brought a motion to stay the proceedings pending the resolution of the underlying state Family Court proceedings. (D.E. # 121.) For the reasons stated below, Allah's motion for reconsideration is denied,[1] and his motion to stay is granted with respect to the remaining defendants.

## DISCUSSION

Because the Court assumes familiarity with the facts recounted thoroughly in the September Memorandum and Order, (M&O at 2–9), background will be given only as is relevant to the discussion of each of Allah's challenges.

### I. Motion for Reconsideration

The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court. See Devlin v. Transp. Commc'n Int'l Union, 175 F.3d 121, 132 (2d Cir. 1999). The standard for granting reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). To preserve scarce

---

[1] The Northwell Defendants, in addition to their arguments on the substance of Allah's motion for reconsideration, correctly point out that the motion was untimely. Local Rule 6.3 requires that a motion for reconsideration be filed "fourteen (14) days after the entry of the Court's determination of the original motion[.]" Allah's motion was filed on October 26, 2018—28 days after the Court's M&O was issued. (See D.E. # 108, 113.) Allah urges the Court to construe his motion as one under Federal Rule of Civil Procedure 59(e), (see D.E. # 109, 117), which allows for "28 days after the entry of judgment." Fed. R. Civ. P. 59(e). However, because Rule 59(e) "applies only to a final 'judgment,' and not the non-final order which is the subject of plaintiff's instant motion," it is inapplicable here. Boddie v. New York State Division of Parole, No. 08-CV-911 (KAM), 2009 WL 1938981, at *2 n.3 (E.D.N.Y. July 7, 2009). Although failing to file the reconsideration motion by Rule 6.3's deadline is alone a sufficient reason to dismiss it, the Court will proceed to articulate why it fails on the merits.

judicial resources and to avoid piecemeal litigation, a motion for reconsideration is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." Enigwe v. Zenk, No. 03-CV-854 (CBA), 2007 WL 2713849, at *7 (E.D.N.Y. Sept. 14, 2007) (quoting Dellefave v. Access Temps., Inc., No. 99-CV-6098, 2001 WL 28677, at *1 (S.D.N.Y. Mar. 22, 2001)); see also Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995) (stating that reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided"). In addition, a party is not permitted to "advance new facts, issues or arguments not previously presented to the Court" on a motion for reconsideration. Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp., 948 F.2d 111, 115 (2d Cir. 1991) (quoting Schonberger v. Serchuk, 742 F. Supp. 108, 119 (S.D.N.Y. 1990)).

### A. Judicial Notice

Allah first argues that the Court erred by taking "judicial notice of extraneous materials, for the truth of the matter[] asserted." (Mot. at 2446.[2]) Specifically, Allah takes issue with the Court's use of two documents when determining that the Northwell Defendants were entitled to qualified immunity: (1) the August 9, 2017, opinion of the Queens County Family Court; and (2) the Medical Assessment by Dr. Hoffman-Rosenfeld. The Court will address each in turn.

#### 1) Family Court Opinion

On the August 9, 2017, Judge Jolley of the Queens County Family Court issued an opinion after hearing testimony from Allah, Hoffman-Rosenfeld, and several other witnesses, that concluded that the New York Administration for Children's Services had "proven by a preponderance of the evidence that [J.R.] sustained injuries, which would not ordinarily occur but for the acts or omissions of another." (See D.E. # 97-2 ("Family Court Op.") at 7.) Judge Jolley

---

[2] Because of the pagination error in Allah's brief, the Court will cite to the ECF page numbers for this document.

4

also found Hoffman-Rosenfeld "credible," (id. at 4, 6, 8), and that "based on Doctor Hoffman Rosenfeld's expert testimony, [J.R.'s] injuries were acute, fresh and recently inflicted, meaning close in time to when he was admitted to the hospital on November 11, 2014," (id. at 8).

Allah argues that the Court erred during its qualified immunity analysis by taking judicial notice of the opinion, as Allah describes it, "for the truth of the matters asserted" in that proceeding, when it is proper to take notice only "to establish the fact of such litigation and related filings." (Mot. at 2446). The Court first notes that Allah expressly consented to the Court consulting the Family Court opinion in a supplemental brief submitted on the issue of collateral estoppel, stating that he "accepts that this Court has the authority to review and consider the underlying family court order in deciding this 12(b)(6) motion." (D.E. # 105 at 1.)

Regardless, the Family Court opinion was not dispositive to the Court's conclusion that the Northwell Defendants were entitled to qualified immunity and therefore is not a ground for reconsideration of that conclusion. With respect to the federal claims, the Court concluded—without reference to the Family Court opinion—that Hoffman-Rosenfeld's assessment of J.R. and her reporting of suspected abuse could not be deemed "contrary to clearly established law." (M&O at 33.) With respect to the state-law claims, the Court concluded—again without discussing the Family Court opinion—that based on the allegations as presented in the Amended Complaint, Hoffman-Rosenfeld was entitled to qualified immunity under the CPSA. (Id. at 38.) The portions of the analysis where the Court discussed the Family Court opinion were both alternative justifications for finding qualified immunity. (See M&O at 33–34 ("Secondly, <u>even if the rights at issue were clearly defined</u>, dismissal of the federal claims would still be warranted given the objective reasonableness of Hoffman-Rosenfeld's assessment.") (emphasis added), 38 ("Hoffman-

Rosenfeld is <u>also</u> entitled to good faith immunity because Allah has failed to allege that she acted with willful misconduct or gross negligence.") (emphasis added).) Without consulting the Family Court opinion, the result would not be different. Accordingly, the Court declines to reconsider its ultimate conclusion based on the complained-of discussion of the Family Court opinion.

### 2) Dr. Hoffman-Rosenfeld's Medical Assessment of J.R.

Allah also takes issue with the Court referencing information from Hoffman-Rosenfeld's documented medical assessment of J.R. in its decision. Again, Allah consented to the Court doing so in his motion papers. (See D.E. # 97 at 9 ("Plaintiff is not opposed to judicial notice of the MOU (Exhibit B), given its numerous incorporation into Defendants' 12(b)(6) Motion, and Plaintiff's responses in his 12(b)(6) arguments. Plaintiff also does not contest the inclusion of Exhibit C, three pages of Dr. Hoffman-Rosenfeld's assessment, as long as it is redacted when filed . . . .").)

And even if Allah had not consented, it is well settled that "'when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding into one for summary judgment." Int'l Audiotext Network, Inc. v. American Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47–48 (2d Cir. 1991)). Allah's Amended Complaint extensively refers to and quotes from Hoffman-Rosenfeld's medical assessment, (see TAC ¶¶ 102–04, 106, 108, 114, 116, 142, 171, 173–75, 178, 181), making it "integral" to the pleading and appropriate for the Court to consider when deciding the motion to dismiss.[3] See Global Network Commc'n, Inc. v. City of New York, 458 F.3d 150,

---

[3] Allah points to one recent case, Campbell v. Hanson, No. 17-CV-1024 (ALC), 2018 U.S. Dist. LEXIS 111215 (S.D.N.Y. June 29, 2018), which states that "[a]s a general matter, the Court may not take judicial notice of medical

156 (2d Cir. 2006) (stating that an extrinsic document is "integral to the Complaint" when the "plaintiff[] rel[ies] on the terms and effect of [the] document in drafting the complaint"); Weaver v. City of New York, No. 13-CV-20 (CBA), 2014 WL 950041, at *2 (E.D.N.Y. Mar. 11, 2014) ("When ruling on a Rule 12(b)(6) motion to dismiss a complaint . . . a court may consider . . . 'documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" (quoting Chambers v. Time Warner Inc., 282 F.3d 147, 153 (2d Cir. 2002))). Allah is therefore not entitled to reconsideration on the ground that the Court used the document. The Court was entitled to do so because he had made the document integral to his complaint.

### B. Qualified Immunity on a Motion to Dismiss

Allah next contends that even if the Court was permitted to consult the Family Court opinion and medical assessment, "[t]here is no case law which permits the use of external materials, even with judicial notice, on deciding the issue of Qualified Immunity [on a motion to dismiss]." (Mot. at 2449.) Instead, he argues that a finding of qualified immunity on a motion to dismiss is appropriate only if it can be found on "the face of the complaint." (Id.) The Second Circuit has never held that the typical procedure for evaluating a 12(b)(6) motion, which includes consideration of "documents appended to the complaint or incorporated by reference, and to matters of which judicial notice may be taken," Tarshis v. Riese Org., 211 F.3d 30, 39 (2d Cir. 2000), abrogated on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), does not apply when analyzing whether a defendant is entitled to qualified immunity. In fact, it recently stated the opposite to be true:

---

records." Id. at *14–*15. The Court first notes that this is not a controlling decision that would require reconsideration. Moreover, Campbell also noted the precedent cited here, and stated that it was not argued that the plaintiff "had possession of, or relied upon" the particular medical records at issue when drafting the complaint. See id. It is therefore distinguishable—here, it is clear that Hoffman-Rosenfeld's assessment was extensively relied upon and central to the allegations in the Amended Complaint.

7

> We review de novo a district court's denial of a motion for judgment on the pleadings based on qualified immunity. See Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003); Garcia v. Does, 779 F.3d 84, 91 (2d Cir. 2015). We apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. Anderson, 317 F.3d at 197. However, when the record includes a video that the parties concede is authentic and accurate, as is the case here, we view the allegations of the complaint as true only "to the extent that they are not contradicted by video evidence." See Garcia, 779 F.3d at 88.

Kass v. City of New York, 864 F.3d 200, 205–06 (2d Cir. 2017). Allah attempts to distinguish Kass by arguing that "Kass was a 12(c) motion, where there was no dispute between parties as to the facts of the case." (Mot. at 2450.) His attempt to find daylight between Rule 12(b)(6) and 12(c) is futile; "[t]he standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). Allah also cites to McKenna v. Wright, 386 F.3d 432 (2d Cir. 2004), which does indeed state that "the facts supporting [qualified immunity must] appear on the face of the Complaint . . . ." (Id. at 436.) However, a closer examination of that passage in context reveals that the court is simply reciting the 12(b)(6) standard more generally:

> Of course, a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route. Not only must <u>the facts supporting the defense appear on the face of the complaint</u>, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.

Id. (emphasis added) (internal quotation marks and citation omitted). McKenna does not explicitly hold that on a motion to dismiss a finding of qualified immunity is confined to the allegations in the complaint and may not consider documents integral to it; that case does not concern documents

integral to the complaint. In light of Kass and without Allah pointing to any controlling precedent stating otherwise, Allah's argument is without merit.

### C. Allah's Remaining Arguments

In a section entitled "Controlling Factual Mat[t]ers that Might Reasonably Alter the Decision of the Court," Allah contests three additional conclusions that the Court made when deciding the motion to dismiss. (Mot. at 2451–2454.)

First, Allah contends that the Court erred when it determined that Hoffman-Rosenfeld did not diagnose J.R. with Shaken Baby Syndrome ("SBS") or Abusive Head Trauma ("AHT") in her medical assessment. (Mot. at 2452–53.) Allah's argument is limited to the fact that his Amended Complaint "repeatedly states" that Hoffman-Rosenfeld found SBS and AHT in her assessment, and that the Court presumably must credit such allegations on a motion to dismiss. In its M&O, the Court explained why it did not do so:

> First, although Allah makes much of the fact that Hoffman-Rosenfeld's purported diagnosis of SBS was incorrect and that a diagnosis of SBS inevitably points to the "last caregiver," which in this case was him, (Supp. Opp. at 4), the allegations that Hoffman-Rosenfeld diagnosed SBS are contradicted by all of the documentary evidence that Allah has conceded that the Court may consider in deciding this motion. Hoffman-Rosenfeld's medical assessment of J.R. does not mention SBS, the Press Release issued by the D.A. Defendants announcing Allah's arrest and describing J.R.'s injuries as conveyed to police officers by Hoffman-Rosenfeld does not mention SBS, and the 25-page Family Court opinion, including the Family Court's summary of Hoffman-Rosenfeld's testimony does not mention SBS.
>        \*  \*  \*
> Because the allegations that Hoffman-Rosenfeld diagnosed J.R.'s injuries as the result from SBS are contradicted by the material that the Amended Complaint is based upon, it is not necessary to accept the allegations as true that Hoffman-Rosenfeld caused Allah to be wrongly targeted by the investigation by her diagnosis of SBS. See L–7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (holding that, for the purposes of deciding a motion to dismiss, courts take allegations as true "unless contradicted by . . . documentary evidence . . . from the exhibits attached" to the complaint); TufAmerica, Inc. v. Diamond, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the

9

court need not accept the allegations in the complaint as true." (internal quotation marks omitted)); Koulkina v. City of N.Y., 559 F. Supp. 2d 300, 329 (S.D.N.Y. 2008) ("The exhibits to the [a]mended [c]omplaint contradict the[ ] allegations [contained in the amended complaint] . . . . [S]uch allegations cannot survive a motion to dismiss when they are contradicted by plaintiffs' own exhibits.").

(M&O at 34–36.) Allah also fails to recognize that the Court followed this discussion with an alternative analysis, where it concluded that "[e]ven if the Court were to accept as true that Hoffman-Rosenfeld diagnosed that J.R.'s injuries were caused by SBS, it would still be insufficient to preclude qualified immunity." (M&O at 36.) Accordingly, there is no cause for reconsideration.

Second, Allah contends that the Court erred when it did not credit the allegations in the Amended Complaint that Hoffman-Rosenfeld "was acting here, in her public role as a child abuse investigator as the Medical Director of the Queens Child Advocacy Center," for the purposes of evaluating immunity under the CPSA, and that she was a "final policy maker, tasked with training, and provides the final word on findings of child abuse for the City of New York," for the purposes of determining municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978). (Mot. at 2453–54.) However, the Court was not required to accept as true these legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Instead, in conducting its own analysis, the Court determined: (1) that the amended complaint had "not alleged facts that Hoffman-Rosenfeld directed the investigation or 'determined culpability,'" but instead "allege[d] that Hoffman-Rosenfeld examined J.R., reported what she saw, and testified" as to her findings, which did not preclude her ability to claim good-faith immunity under the CPSA, (M&O at 37–38); and (2) that Hoffman-Rosenfeld "was not a final policy maker" of Northwell Health, which was one of several reasons that Allah was unable to succeed on his Monell claim,

(M&O at 42–44). Allah does not challenge these analyses directly—and without further argument about why Iqbal should not have been followed here, the Court sees no need to reconsider them.

Finally, Allah, in opposing qualified immunity, restates his allegation that Hoffman-Rosenfeld's medical assessment was "far from reasonable" and instead was an "[i]ntentionally, and [k]nowingly and [r]eckless forensic investigation." (Mot. at 2554.) However, Allah has not sought reconsideration of the Court's preceding and independent conclusion that Allah has identified no clearly defined rights that Hoffman-Rosenfeld violated. (M&O at 33.) In the complaint, Allah alleges that Hoffman-Rosenfeld "crossed a line from lawful to unlawful and unconstitutional conduct" (a conclusory allegation), (TAC ¶ 36), and "did so by utilizing what is now believed to be, among physicians versed in investigating, assessing and diagnosing child abuse matters, the 'junk science' of 'triad symptoms' leading her, through her intentional use of such 'junk science', to make false diagnoses of Shaken Baby Syndrome ('SBS') or as currently denominated Abusive Head Trauma ('AHT')." (TAC ¶ 37.) Allah has offered no further persuasive argument for why the alleged actions, assuming Hoffman-Rosenfeld made the alleged diagnosis at all, would violate clearly defined rights, so the Court will not reconsider its conclusion that they do not. As that conclusion was independently sufficient to support the Court's finding of qualified immunity, the Court sees no reason to reconsider its subsequent assessment of the reasonableness of Hoffman-Rosenfeld's examination. (Id. ("Secondly, <u>even if the rights at issue were clearly defined</u>, ...." (emphasis added)).) Allah offers no further case law to persuade the Court to reconsider its M&O on this front. Allah only gestures to his own Third Amended Complaint and alludes to the conclusory allegations in that complaint to imply that the Court had erred: "Northwell Defendants wrongly allege that (a) Dr. Hoffman Rosenfeld is only a medical professional who (b) conducted a reasonable investigation. Those are not the facts alleged in the

11

TAC." (Mot. at 2452.) The implied argument would seem to be that Hoffman-Rosenfeld was more than a medical professional and that she conducted an unreasonable investigation, but both allegations are legal conclusions that the Court will not credit. Such bare argumentation on reconsideration has not persuaded the Court to reconsider its finding of qualified immunity.

And in any event, Allah's allegations—the ones remaining once the Court disregards Allah's persistent conclusory allegations and allegations contradicted by the medical report[4]—are not sufficient to support the argument that Hoffman-Rosenfeld's actions were objectively unreasonable. As this Court stated in its original M&O, "[i]n the context of child abuse or neglect proceedings, the Second Circuit has applied a deferential standard, emphasizing that 'courts must apply the "reasonable basis" test to permit investigators considerable discretion in the abuse context.' Wilkinson v. Russell, 182 F.3d 89, 106 (2d Cir. 1999)." While Allah seems to argue that Hoffman-Rosenfeld's notations in the medical report regarding the limited nature of her information at the time of making the report evidence an unreasonable failure to acquire further information, (TAC ¶ 102–03), that allegation in fact supports the reasonability of Hoffman-Rosenfeld's actions. By noting, at the time of her assessment, that "[d]etails of timeline are unavailable," (D.E. 89-1 at 1), and "mother unavailable,"[5] (id. at 2), Hoffman-Rosenfeld provided

---

[4] Allah alleged that Hoffman-Rosenfeld "made no efforts to look at a potential diagnosis other than Abusive Head Trauma (AHT) formerly known as Shaken Baby Syndrome (SBS)." (TAC ¶ 105.) However, the Court need not credit that allegation because it is contradicted by the medical report integral to the complaint. Setting aside whether Hoffman-Rosenfeld's description of the CT scan that had been done at St. John's actually constitutes a diagnosis of Abusive Head Trauma or Shaken Baby Syndrome, the report reflects diagnostic interest in items far afield from that diagnosis; it discusses finding "skin bruises/contusion of head and pelvic/suprapubic region that have areas of pattern which are similar implying use of an implement." (D.E. # 89-1 at 3.) These notes make clear that Hoffman-Rosenfeld did evaluate for symptoms other than those symptoms that would lead to a diagnosis of SBS, as the Court is aware of no argument that patterned pelvic/suprapubic bruising is one of, as Allah puts it, the "markers/factors or 'constellations' of what the prevailing medical science has now and otherwise debunked as indicative of Abusive Head Trauma (AHT) or as it was previously known as the debunked Shaken Baby Syndrome (SBS)," (TAC ¶ 104).

[5] In his Third Amended Complaint, Allah provides quotes in ¶ 102 that appear to be slightly misquoting the medical report (although the Court cannot be entirely sure, as no source citation is provided for the quotations in that paragraph). The Court views these as quotations from the medical report that have been incorrectly transcribed and, therefore, is using the accurate language from the medical report, (D.E. # 89-1), to substitute for the misquotations in ¶ 102.

12

important context for any individual reading her assessment in the future who may have more complete or contradictory information available. Commenting that at the time the "mother [was] unavailable" in fact caveats Hoffman-Rosenfeld's comment that "there was no explanation for the injuries," (id. at 1–2), and is a reasonable way to provide context. The alleged harm to Plaintiff stemmed from Hoffman-Rosenfeld allegedly diagnosing the injury as "acute," (TAC ¶ 108), purportedly narrowing the time frame for the cause of the child's injuries down to a time period during which the Plaintiff was caring for the child. Hoffman-Rosenfeld's diagnosis of the child's injuries as "acute"—an allegation, the Court should note, which is not supported by any language the Court can find in the medical report—seems within reason on the facts as Plaintiff has alleged them: that the child had fallen "recently," (TAC ¶ 83), causing "swelling on the side of [the child's] head" that his mother observed "[a]t or about 8:30 P.M.," (TAC ¶ 82), i.e., 13 hours before Hoffman-Rosenfeld's examination. (See also TAC ¶ 85 ("[O]n November 10, 2014 [the mother] observed the bump/swelling on [the child's] head.").) And regardless of whether Hoffman-Rosenfeld's alleged diagnosis was ultimately the right one, she did nothing to stray outside the bounds of the wide discretion that the Second Circuit affords investigators in the child abuse context.

## II. Motion to Stay

On December 26, 2018, the Appellate Division of the Supreme Court of the State of New York reversed the decision of the Queens County Family Court with respect to its finding that Allah did not "derivatively abuse[] the child A.A." (D.E. # 120.) Allah subsequently moved to stay the proceedings in this case, stating that the recent decision by the Appellate Division "does affect many outstanding issues in this federal case," and that it would be prudent to stay proceedings until the "underlying family court decision and its appeals conclude." (D.E. # 121.)

The Northwell Defendants opposed a stay. The other defendants remaining in this action—represented by Corporation Counsel for the City of New York—do not oppose a stay. Because the motion for reconsideration is denied and the Northwell Defendants are dismissed from this action, the Court grants the stay of proceedings on consent of all remaining parties.

## CONCLUSION

For the reasons stated above, Allah's motion for reconsideration is denied. The Northwell Defendants remain dismissed from this action. Allah's motion for a stay of proceedings is granted on consent of the remaining parties. The Court directs Allah to provide the Court with an update every 60 days until the underlying Family Court matter is ultimately resolved.

SO ORDERED.

Dated: December 13, 2019
      Brooklyn, New York

                                            s/Carol Bagley Amon
                                            Carol Bagley Amon
                                            United States District Judge